IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOBSON MILLS APARTMENTS, L.P., DOBSON SCOTTS, L.P. and MANSION AT BALA, L.P. | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | No. _____ |
| CITY OF PHILADELPHIA and PHILADELPHIA, PENNSYLVANIA BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO, | : : : : : : | |
| Defendants. | : : | |

## **COMPLAINT**

Plaintiffs Dobson Mills Apartments, L.P., Dobson Scotts, L.P. and Mansion at Bala, L.P. bring this action for a declaratory judgment and related relief arising out of a purported settlement of a federal lawsuit in this Court that had been pending in front of Judge J. Curtis Joyner (Docket Nos. 05-cv-6236 and 05-cv-6237), which purported settlement was entered into on or about May 30, 2006.

### **Introduction**

1. Plaintiffs are owners and/or developers of real estate in the City of Philadelphia.

2. In or about the mid-2000s, plaintiffs sought zoning and other government approvals to construct two market rate residential apartment complexes within the City of Philadelphia.

3. In connection with issuing the requisite approvals for these privately funded projects, the City of Philadelphia essentially made it a forced condition that plaintiffs build the projects using union labor.

4. While construction was ongoing on one of the projects, the City of Philadelphia issued various violation notices regarding the construction—including directing work stoppages—and ultimately brought a legal action against plaintiffs and/or their assignors in the Philadelphia Court of Common Pleas to enforce so-called conditions that applied to the City of Philadelphia's approvals for the construction, which conditions involved, among other things, a purported obligation on the part of plaintiffs or their assignors to solely use union labor.

5. The lawsuit was removed to federal court—namely, to the United States Court for the Eastern District of Pennsylvania (at Docket Nos. 05-cv-6236 and 05-cv-6237) —and was shortly thereafter resolved via an Agreement of Settlement and Understanding (the "Agreement") between the parties to this declaratory judgment lawsuit.  The Agreement is attached hereto as Exhibit A.

6. Plaintiffs—and, potentially going forward, any of their subsidiaries, affiliates, successors or assigns—desire to further develop, transfer and/or sell to affiliated entities or third parties who may want to further develop the parcels of real property[1] referenced in the Agreement.

7. However, before making such a multi-million dollar commitment and exercising the monumental effort to further develop the vacant portions of the two subject parcels of real property, or to sell each parcel "as is," plaintiffs seek a declaratory judgment as to the enforceability, legality, meaning and scope of the Agreement some fourteen years after it was entered into with respect to any purported obligation placed upon plaintiffs (or their potential

---

[1] For convenience, the parcels are referenced in this "Introduction" section of the Complaint as the same two parcels in the Agreement, although one has since been subdivided as further detailed below.  Each parcel is comprised of both a developed portion (containing an existing project) and a vacant portion (consisting of undeveloped land).

successors, assigns or third party buyers) to develop the parcels of real property using only union labor.

8.    It is estimated that each project to be developed on the vacant portions of the subject parcels would cost approximately $10 to $12 million dollars more—in other words, a cost overage of fully 70% to 85%—using union labor as opposed to accepting bids from otherwise qualified non-union contractors.  Such a massive difference in cost makes using an all union labor force for these projects economically unfeasible, if not impossible.

9.    Forgoing the development opportunities because of the cost differential would result in the parcels of real property not being put to their best and highest use; would prevent the creation of numerous well-paying jobs; and would prevent construction of new and desperately needed market rate rental housing in the City of Philadelphia.  Moreover, the Agreement creates an uncertain situation as to the possibility of further developing the subject parcels and, as a result, significantly reduces the value of the parcels by making the undeveloped portions of the parcels relatively worthless.

10.   Plaintiffs request a declaratory judgment from this Court relieving them of any purported obligation, and/or reasonably limiting any purported obligation, to develop the parcels of real property using all or only union labor.

11.   It should be noted that in connection with the original dispute over fourteen years ago, it was plaintiffs' and/or their assigns' position that the City of Philadelphia used the threat of revoking previously issued zoning permits and approvals on current projects under development, and of not granting such permits and approvals for any future development, to illegally and unconstitutionally force the owners of the projects to use union labor.  The City of Philadelphia

also issued pretextual violations relating to ongoing construction in an attempt to provide "legal cover" for its otherwise unlawful acts.

12.     Such tactics are not only illegal but, at this date and time, would be counterproductive to the economic and other interests of the parties involved and the public.

### **The Parties**[2]

13.     Dobson Mills Apartments, L.P. ("Dobson Mills Owner") is a limited partnership formed under the laws of the State of Texas, which owns a parcel of real property located at 4055 Ridge Avenue (formerly, 4041 Ridge Avenue), Philadelphia, PA (the "Dobson Mills Site").

14.     Dobson Scotts, L.P. ("Dobson Scotts Owner"), although not a party to the Agreement, subsequently obtained an interest in the undeveloped portion of the Dobson Mills Site which has been subdivided into a separate parcel with an address of 4021 Ridge Avenue, Philadelphia, PA (the "Dobson Scotts Site"), and Dobson Scotts Owner therefore is named as an interested party to this declaratory judgment action.  Dobson Scotts Owner is a limited partnership formed under the laws of the State of Texas.

15.     Mansion at Bala, L.P. ("Bala Owner") is a limited partnership formed under the laws of the State of Texas, which owns a parcel of real property located at 4700 City Avenue, Philadelphia, PA (the "Bala Site").

16.     The City of Philadelphia (the "City") is the largest city in the Commonwealth of Pennsylvania by population.

17.     The Pennsylvania Building and Construction Trades Council, AFL-CIO (the "Trades Council") is an umbrella organization for local unions that work in the construction

---

[2]   For convenience, the parties will be referred to as they are referenced in the Agreement itself.

industry in the Greater Philadelphia region, with a principal place of business located at 4170 Woodhaven Rd, Philadelphia, PA 19154.

## Jurisdiction And Venue

18.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, because determination of this controversy will require resolution of disputes arising under the Constitution and laws of the United States, including the 5th and 14th Amendments.

19.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a), because this controversy is between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because defendants reside in this judicial district; a substantial part of the events or omissions giving rise to the claim occurred in this judicial district; and the properties that are the subject of this action are situated in this judicial district.

## Background

21.     The gravamen of this lawsuit is how the Agreement affects—if at all—the planned and subsequent future development of the Dobson Scotts Site (formerly part of the Dobson Mills Site) and the Bala Site.

22.     Currently, the Dobson Scotts Site is comprised of a 3.2 acre vacant and undeveloped tract of land.  As previously mentioned, this tract was formerly the vacant portion of the Dobson Mills Site which was subdivided into a separate tract in 2016.  Currently, the Dobson Mills Site is comprised entirely of the completed and occupied mixed use multi-family project (referenced in the attached Agreement as the Dobson Mills First Phase Project), consisting of 415

market rate rental apartment units and 6 retail units (referred to hereinafter as the "Dobson Mills Project").

23.   Currently located on the Bala Site is the completed and occupied first phase development on approximately 4.7 acres of that site, consisting of 276 market rate rental apartment units (the "Bala First Phase Project"). The Bala Site also contains approximately 2.13 acres of vacant and undeveloped land.

24.   Plaintiffs and/or their successors, affiliates and assigns seek to further develop the Dobson Scotts Site by constructing, among other things, 133 market rate rental apartment units (the "Dobson Scotts Project").

25.   Plaintiffs and/or their successors, affiliates and assigns seek to further develop the vacant portions of the Bala Site by adding, among other things, additional market rate rental apartment units (the "Bala Second Phase Project"), either as a separate construction project or as an addition to the existing project.

26.   Alternatively, plaintiffs may transfer, convey and/or sell the Dobson Scotts Site and/or the developed and/or undeveloped portions of the Bala Site to affiliated entities or to a third party, who may wish to similarly develop the sites.

27.   Again, approximately fifteen years ago, during construction of the Dobson Mills Project, the City sued, among other parties, Winther Investments, Inc.[3], in the Philadelphia Court of Common Pleas at docket number 051101772 (the "State Court Action") to enforce certain violations issued by the City and, indeed, to halt ongoing construction of the private construction

---

[3]   Winther Investments, Inc. subsequently assigned its rights to Dobson Mills Owner, and thus is not a necessary party to the instant lawsuit.

project at the Dobson Mills Site for the sole purpose of inflicting pressure on the owner to build the project with an all union labor force.

28. The defendants in the State Court Action removed the lawsuit to the United States Court for the Eastern District of Pennsylvania, at Docket Nos. 05-cv-6236 and 05-cv-6237 (collectively, the "Federal Court Action").

29. The only purpose of this court action was to apply pressure on the owners and developers of the Dobson Mills Site and Bala Site to use only union labor in connection with the construction of privately funded projects.

30. The defendants in the Federal Court Action—*i.e.*, the owners and developers of the Dobson Mills Site—argued that the City was unlawfully and unconstitutionally exerting pressure on them by issuing pretextual violations and work-stoppage notices not because there were any actual matters relating to the construction that could form the basis for such violations or work stoppages but, rather, because the City wanted to impose the use of an all union labor force for the construction of the Dobson Mills Project.

31. The City's actions put the owners and developers of the sites in grave financial peril. For example, a work stoppage, an injunction to force the replacement of non-union contractors with union contractors on a project already under construction, an order to vacate the construction site <u>or</u> the rescission of zoning approvals as threatened would have been disastrous. The City also promised that the owners and developers would face additional lawsuits and legal actions seeking to stop construction and revoke the existing permits and approvals by all means possible. The owners and developers were forced by these circumstances to seek the quickest possible resolution of the dispute.

32. Thus, Dobson Mills Owner and Bala Owner were compelled to resolve the Federal Court Action by entering into the Agreement on or about May 30, 2006.

33. The Dobson Mills Project and the Bala First Phase Project were completed thereafter, and the planned additional phases of construction at the sites referenced in the Agreement—*i.e.*, the Dobson Mills Second Phase Project and the Bala Second Phase Project—never came to fruition.

34. Now, over fourteen years after the parties entered into the Agreement, plaintiffs, and/or their respective affiliates, successors and assigns, are in the position to either begin new and additional development at the Dobson Scotts Site and Bala Site, respectively, or—alternatively—to transfer or sell the parcels to an affiliated entity or a third party who may be interested in further developing them.

35. The development, or the possibility of carrying out such development, of the subject sites will ensure that they are put to their best and highest uses; will create good, high paying construction jobs; and will bring much needed market rate rental housing to those areas of the City in which the sites are located.

36. However, in costing out the construction projects, plaintiffs estimate that using only union labor would increase the cost of each project in the approximate amount of $10 to $12 million (fully 70% to 85%) over the cost that would be charged using non-union labor in an arm's length and competitive bidding process.

37. This cost overage makes the planned construction at each of the sites unfeasible—if not impossible—using only union labor.

38. The uncertainty as to the enforceability, legality, meaning and scope of the year 2006 Agreement as it relates to plaintiffs' year 2021 plans (and subsequent years' plans) for the

subject sites has serious and imminent consequences. For example, the planned construction of the Dobson Scotts Project has received all permits and approvals required to start construction, but this project is essentially at a standstill until the issues raised in this lawsuit are resolved. It must be noted that the building permits will expire by mid-year 2021 and Dobson Scotts Owner, a plaintiff hereto, therefore risks losing hundreds of thousands of dollars in permit, design and other fees and expenses paid to date in connection with the development of this new project.

39.     Moreover, plaintiffs queried the City as to whether and how it would enforce the Agreement with respect to future and proposed construction of privately funded development projects on the Dobson Scotts Site (formerly a part of the Dobson Mills Site) and Bala Site, but no response was forthcoming. This only increases the uncertainty inherent in further developing the subject parcels.

40.     Plaintiffs have additional uncertainty as to what they should or must disclose to investors, lenders or third parties who may be interested in becoming involved in the proposed construction projects, or in purchasing the sites, as to the enforceability, legality, meaning and effect of the Agreement.

41.     Until these matters are determined, plaintiffs cannot move forward with any of their plans, and the sites will sit fallow and unused as opposed to being turned into job and income generating properties.

### Count I—Declaratory Judgment

42.     Plaintiffs incorporate the foregoing averments as if set forth at length herein.

43.     Pursuant to 28 U.S.C. § 2201, in a case or actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights

and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

44. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

45. Here, there is an immediate, ripe, non-hypothetical and justiciable controversy between plaintiffs, on the one hand, and defendants, on the other hand, as to the enforceability, legality, meaning and scope of the Agreement.

46. Among other things, there is a substantial question as to whether the City can, via litigation, force a private business to enter into such an Agreement, and then subsequently enforce that Agreement from its date of execution to an unascertainable and uncertain date in the future (the Agreement has no expiration date) to require a party to use only union labor on construction of privately funded development projects that receive no government funding whatsoever, and which are located on certain discrete and isolated parcels of privately owned real property in the City.

47. For example, in the present day, there is a significant amount of non-union construction at various locations in the City. In addition, the City's zoning code has changed since the Agreement was signed. The zoning code now allows for a zoning permit to be granted "by right" as opposed to by variance (as stipulated in the Agreement) for the development of commercial projects similar to the recently permitted Dobson Scotts Project. Further, the projects planned at present are substantially different from those projects that were planned at or around the time the Agreement was entered into.

48. Related to the foregoing, there are substantial questions as to whether actions by the City—including attempted present day enforcement of the Agreement—would violate

plaintiffs' rights under the Constitution of the United States, especially those supplied by the 5th and 14th Amendments, or whether the Agreement should be void as being against public policy.

49. There is a substantial question as to whether the Agreement should be void for lack of consideration.

50. There is a substantial question as to whether any relief granted under the Agreement should be solely limited to financial damages actually incurred by any party with standing to complain of such damages, as opposed to specific performance (which is not set forth as a remedy in the Agreement) and, also, what the extent of monetary damages—if any—could be.

51. There is a substantial question as to whether the purported obligations in the Agreement (an unrecorded instrument) somehow "run with the land" or are binding upon successors, assignees or transferees, including Dobson Scotts Owner, the current owner of the Dobson Scotts Site (formerly a part of the Dobson Mills Site), of the owner of the other subject parcel or upon third party purchasers of the parcels.

52. There are also other substantial questions relating to the enforceability, legality, meaning and scope of the year 2006 Agreement in light of plaintiffs' year 2021 plans (and subsequent years' plans) with respect to the referenced sites.

53. These questions make it virtually impossible for plaintiffs to determine their obligations and/or the costs and benefits of any given proposed transactions touching upon or affecting the subject parcels.

54. Plaintiffs should not have to risk litigation by the City or the Trade Council if they decide to move forward with their plans for the sites.

55. A declaratory judgment is necessary and proper to determine the parties' rights prior to any one party changing position economically or otherwise in connection with the matters referenced or alluded to in the Agreement.

56. Issuance of a declaratory judgment is also in the interest of judicial economy, as it will tend to provide guidance that the parties can use to forestall additional litigation or disputes among them going forward.

57. All necessary parties for the declaratory relief to issue are joined in this lawsuit.

58. All conditions precedent—if any—to bring this claim have been satisfied.

WHEREFORE, Plaintiffs respectfully request the entry of an appropriate declaratory judgment as to the enforceability, legality, meaning and scope of the Agreement, to include a declaration that the Agreement is unenforceable, illegal and/or otherwise cannot prevent plaintiffs from using non-union labor for construction at the Dobson Scotts Site and Bala Site and, further, that the Agreement does not "run with the land" and is not binding on assignees, transferees, successors or third party purchasers of the referenced real estate parcels, and such other declarations and relief as the Court may deem just and proper under the circumstances.

|  |  |  |
|---|---|---|
|  |  | KLEHR HARRISON HARVEY BRANZBURG LLP |
| Date: January 20, 2021 | By: | //s//  William J. Clements Charles A. Ercole William J. Clements 1835 Market Street, 14th Floor Philadelphia, PA 19103 Ph  (215) 569-2700 Fax  (215) 568-6603 cercole@klehr.com wclements@klehr.com |
|  |  | *Attorneys for Plaintiffs* |